UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

Mark Garth,

        Plaintiff,                      Case No. 2:21-cv-47

v.                                            Hon. Hala Y. Jarbou

B. Hall et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is further required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will drop Defendants Hasse, Stevenson, Bourque, Gurnoe, Gilbert, Hetrick, Bradly, Bullman, Baker, and Lipponen under Rule 21 because they are misjoined. The Court will also dismiss without prejudice on grounds of misjoinder Plaintiff's claims against Defendants Smith, Golladay, and Newland involving conduct that occurred after December 13, 2019. The Court will further

dismiss with prejudice Plaintiff's Eighth and Fourteenth Amendment claims against the remaining Defendants.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility.  Plaintiff sues the following URF employees:  Corrections Officers B. Hall, Unknown Smith, D. Bergeron, Unknown Hall,[1] Unknown Golladay, Unknown Newland, Unknown Hasse, Unknown Stevenson, Unknown Bourque, Unknown Gurnoe, Unknown Gilbert, Unknown Bradly, Unknown Bullman, Unknown Baker, and G. Lipponen; and Prison Counselor Unknown Hetrick.

Plaintiff's complaint covers a series of discrete events from July 2019 to February 2020, involving the 16 Defendants to varying degrees.  In his earliest allegations, Plaintiff alleges Defendants B. Hall, Smith, and Bergeron began harassing him on July 10, 2019.  These three Defendants allegedly threatened to have Plaintiff removed from his prison job and placed in segregation.  Defendants B. Hall, Smith, and Bergeron were assigned to the Recreation and Education Building (REB).  At that time, Plaintiff's cell was located in the Marquette Housing Unit (Marquette).  Plaintiff alleges that Defendants B. Hall and Bergeron told Marquette staff that Plaintiff had filed grievances against the REB staff, and encouraged Marquette staff to harass Plaintiff.

---

[1] Plaintiff identifies two defendants with a surname of "Hall."  The complaint appears clear that they are not one in the same.  Plaintiff specifies that Defendant B. Hall is a corrections officer in the Recreation and Education Building and Defendant Unknown Hall is a corrections officer in the Marquette Housing Unit.

Plaintiff alleges that starting December 9, 2019, Marquette and REB staff shook down his cell on five consecutive days. Plaintiff alleges that Defendant Unknown Hall shook down his cell on December 9, 2019. The next day, December 10, 2019, Defendant Golladay again shook down Plaintiff's cell with an unidentified officer in training (not a defendant).

Plaintiff alleges that on December 11, 2019, he told the three REB Defendants—B. Hall, Smith, and Bergeron—that he intended to file a grievance against them. That day, two of the REB Defendants—Smith and Bergeron—allegedly went to Marquette and shook down Plaintiff's cell. Plaintiff alleges that Defendants Smith and Bergeron planted prescription pills in Plaintiff's area and took property belonging to Plaintiff. Because pills were found during the December 11, 2019, shakedown, Plaintiff received a substance abuse misconduct, which resulted in a loss of privileges and restrictions placed on visitation.

The shakedowns allegedly continued. Although Plaintiff fails to identify who conducted the December 12 shakedown, he alleges that Defendant Newland shook down his cell on the last of the five consecutive days, December 13, 2019.

Plaintiff's remaining allegations do not pick up until a month later, January 13, 2020. He alleges that, on that date, Defendant Hasse shook down his cell. Plaintiff asserts that he experienced other difficulties in Marquette until January 30, 2020. On January 30, 2020, Plaintiff was transferred to Neebish Housing Unit (Neebish), but before leaving, Defendant Golladay allegedly phoned the staff at Neebish to report that "[Plaintiff] is a trouble[-]maker[;] give him a hard time." (Compl., ECF No. 1, PageID.10.) Plaintiff's remaining allegations at Neebish, which continue through February 15, 2020, fail to allege any further conduct by the REB and Marquette staff.

Plaintiff alleges that Defendants violated the First, Eighth, and Fourteenth Amendments.  For relief, Plaintiff seeks damages, declaratory relief, costs and fees, and any other appropriate relief.

## II.     Misjoinder

Plaintiff joins 16 Defendants, each sued in both their personal and official capacities, connecting a series of discrete claims.  At this juncture, the Court reviews whether Plaintiff's claims are misjoined.

### A.     Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states:  "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

4

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for

5

frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's

request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Furthermore, he would avoid the consequences of filing at least three actions with all claims dismissed as meritless, frivolous, or for failure to state a claim.

Therefore, the Court will look to the first listed Defendant and the first set of clear factual allegations against that Defendant to determine which portion of the action should be considered related. Plaintiff lists Defendant B. Hall first in the complaint's caption (*id.*, PageID.1), list of defendants (*id.*, PageID.2), and body (*id.*, PageID.5). Plaintiff's earliest factual allegations assert that Defendants B. Hall, Smith, and Bergeron harassed Plaintiff, and that B. Hall and Bergeron told several Marquette-based Defendants that Plaintiff files grievances thus encouraging them to harass Plaintiff too. Further, Plaintiff's only allegations involving Defendant B. Hall relate to conduct that concluded by December 13, 2020. As a result, none of the Defendants other than Smith, Bergeron, Unknown Hall, Golladay, and Newland is transactionally related to Plaintiff's claim involving Defendant B. Hall. Likewise, no Defendant's conduct after December 13, 2020, is transactionally related to Plaintiff's first claim involving Defendant B. Hall. Moreover, it is clear that no question of law or fact is common to all Defendants. *See* Fed. R. Civ. P. 20(a)(2)(B). Plaintiff has, therefore, improperly joined Defendants Hasse, Stevenson, Bourque, Gurnoe, Gilbert, Hetrick, Bradly, Bullman, Baker, and Lipponen. Additionally, Plaintiff has improperly joined claims against Defendants Smith, Golladay, and Newland involving conduct after December 13, 2020.

7

### B. Remedy

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings a civil rights action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan, the statute of limitations is three years. *See* Mich. Comp. Laws

8

§ 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316 (9th Cir. 1999)). The Sixth Circuit noted that, because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id.* at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's misjoined claims involve conduct that has occurred since January 2020, well within the three-year period of limitations. Those claims are not at risk of being time-barred.

9

Accordingly, the Court will exercise its discretion under Rule 21 and drop Plaintiff's claims against Defendants Hasse, Stevenson, Bourque, Gurnoe, Gilbert, Hetrick, Bradly, Bullman, Baker, and Lipponen because they are misjoined and not at risk of being time-barred. The Court will dismiss without prejudice Plaintiff's complaint against them under Rule 21 of the Federal Rules of Civil Procedure. Further, the Court will likewise dismiss without prejudice Plaintiff's claims against Defendants Smith, Golladay, and Newland involving conduct that occurred after December 13, 2019.[2]

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

---

[2] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV.     First Amendment

By asserting a First Amendment violation, Plaintiff presumably intends to allege that Defendants retaliated against him for threatening to file a grievance.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037

(6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Upon initial review, the Court concludes that Plaintiff has alleged facts sufficient to state a First Amendment claim of retaliation against Defendants B. Hall, Smith, Bergeron, Unknown Hall, Golladay, and Newland.

## V.     Eighth Amendment

Plaintiff further contends that Defendants violated the Eighth Amendment, presumably when Defendants allegedly harassed Plaintiff.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff fails to articulate the specific conduct he endured that he alleges was harassment. Instead, he merely concludes that the unspecified conduct was harassment. However, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Moreover, even if Plaintiff were to allege that Defendants used harassing language, he would fail to state a claim against them. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See*

13

*Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Thus, Plaintiff fails to state an Eighth Amendment claim against Defendants. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim.

## VI. Fourteenth Amendment

Plaintiff also contends that Defendants violated the Fourteenth Amendment, presumably because Defendants Smith and Bergeron allegedly planted prescription medication in his area during the December 11, 2019 shakedown, and he was punished for the offense. Documents Plaintiff has attached to his complaint indicate that he received a substance abuse misconduct, which is categorized as a Class I misconduct by the MDOC. *See* MDOC, Policy Directive 03.03.105A (eff. July 1, 2018).

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an

indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Documents Plaintiff attaches to his complaint indicate that he was restricted to non-contact visitation for 30 days, and he lost privileges for 30 days.

Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69

16

F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)).  Consequently, Plaintiff's loss of privileges and loss of wages associated with his prison job did not trigger a right to due process.

Likewise, Plaintiff's restriction on visitation fails to trigger a right to due process.  In *Overton v. Bazzetta*, 539 U.S. 126 (2003), the Supreme Court considered the constitutional protections that apply to prison visitation under the very policy that extends loss of the visitation privilege for Plaintiff.  The Court recognized that "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose."  *Id.* at 134.  Furthermore, in *Bassett v. McGinnis*, 430 F.3d 795 (6th Cir. 2006), the Sixth Circuit, sitting en banc, addressed the procedural due process issue left open in *Overton*.[3]  The Sixth Circuit concluded that the visitation limitations in the MDOC policy, including the six-month delay in requesting relief that followed a misconduct conviction, were not an "'atypical and significant hardship' in relation to the ordinary incidents of prison life." *Id.* at 802.  Accordingly, the Sixth Circuit concluded the regulation did not implicate a liberty interest on its face.  *Id.* at 802–03.  Thus, neither the sanction of lost privileges nor the sanction of lost rights to receive visitors is sufficiently significant or atypical to warrant due process protection.  Therefore, Plaintiff fails to allege a procedural due process violation.

Thus, Plaintiff has failed to state a Fourteenth Amendment claim against Defendants.  Accordingly, the Court will dismiss his Fourteenth Amendment claim.

---

[3] "The *Overton* Court did not grant certiorari on the issue of whether the regulations violated the prisoners' procedural due process rights under the Fourteenth Amendment." *Bazzetta*, 430 F.3d at 799.

**Conclusion**

Having conducted the review required by Rule 21 of the Federal Rules of Civil Procedure, the Court determines that the Defendants Hasse, Stevenson, Bourque, Gurnoe, Gilbert, Hetrick, Bradly, Bullman, Baker, and Lipponen are misjoined in this action. The Court will dismiss Plaintiff's complaint against them without prejudice. The Court will also dismiss without prejudice Plaintiff's claims against Defendants Smith, Golladay, and Newland that involve conduct that occurred after December 13, 2019.

Having conducted the review required by the Prison Litigation Reform Act, the Court further determined that Plaintiff's Eighth and Fourteenth Amendment claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claims against Defendants B. Hall, Smith, Bergeron, Unknown Hall, Golladay, and Newland, insofar as the claims involve conduct that occurred up through December 13, 2019, remain in the case.

An order consistent with this opinion will be entered.


Dated:   April 15, 2021                             /s/ Hala Y. Jarbou
                                                                   HALA Y. JARBOU
                                                                   UNITED STATES DISTRICT JUDGE