UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK GARTH #950635,                                    Case No. 2:21-cv-00047

               Plaintiff,                          Hon.  Jane M. Beckering
                                                       U.S. District Judge

    v.

B. HALL, et al.,

               Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses Defendants' motions for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF Nos. 20 (motion by Bergeron, Golladay, B. Hall, and Smith) and 28 (motion by D. Hall).)

The Plaintiff – state prisoner Mark Garth - filed a verified complaint alleging a variety of unconstitutional actions by some 16 Defendants from July 2019 to February 2020.  (ECF No. 1.)  Plaintiff's claims were narrowed significantly by the Court's screening opinion issued on April 15, 2021.  (ECF No. 4.)  The Court dismissed without prejudice Hall's claims against Defendants Hasse, Stevenson, Bourque, Gurnoe, Gilbert, Hetrick, Bradly, Bullman, Baker, and Lipponen because those claims were misjoined and not at risk of being time-barred.  (ECF No. 4, PageID.212, 220.)  In addition, the Court dismissed without prejudice Plaintiff's claims against Defendants

Smith, Golladay, and Newland involving conduct that occurred <u>after</u> December 13, 2019. (*Id.*)  Further, the Court dismissed all of Garth's Eighth and Fourteenth Amendment claims against all Defendants. (Id, PageID.220.)   Finally, the Court noted that Plaintiff's First Amendment retaliation claims against Defendants B. Hall, Smith, Bergeron, Unknown Hall, Golladay, and Newland[1], insofar as the claims involve conduct that occurred up through December 13, 2019, remain in the case.  (*Id.*)

The remaining retaliation claims arise out of cell searches and a misconduct ticket.  The events occurred while Garth was confined at the Chippewa Correctional Facility (URF).  Garth says that starting on December 9, 2019, Defendants shook down (searched) his cell for five consecutive days.  (ECF No. 1, PageID.5-6.)  Garth says that he told COs B. Hall, Smith, and Bergeron on December 11, 2019, that he intended to file a grievance and that, later that day, Smith and Bergeron planted prescription drugs in his cell and issued him a misconduct ticket for substance abuse. (*Id.*)  Garth says that his cell was again searched by unknown officers on December 12, 2019, and by CO Newland on December 13, 2019.  (*Id.*)

It is respectfully recommended that the Court grant the Defendants' summary judgment in part by dismissing D. Hall, Golladay, and B. Hall, and deny the motion in part as to Defendants Smith and Bergeron.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

---

[1]    Defendant CO Newland does not join in Defendants' motions.  (ECF No. 21, PageID.275, n. 1.)

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be

---

[2]     If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue.  (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence.  *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare

circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to

resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

6

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that if extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance

procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[3], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94.  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

---

[3]  Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

rules will not bar that prisoner's subsequent federal lawsuit.   *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.  *See id*. at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

## IV.  Plaintiff's Allegations

Plaintiff's allegations are summarized in the table below.[5]

---

[4]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

[5]    Garth's complaint, which is 15 pages in length and includes some 33 attachments, is not a model of clarity.  In reviewing Garth's claims, the undersigned had difficulty distinguishing retaliation claims from harassment claims.  As noted above, only Garth's retaliation claims remain in this case.  (ECF No. 4, PageID.220 (screening opinion).)   The summary chart shown here outlines all claims that potentially qualify as retaliation claims.

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|---|
| 1 | Searched cell | D. Hall (MUO) | December 9, 2019 |
| 2 | Searched cell | Golladay and an officer-in-training | December 10, 2019 |
| 3 | Searched cell and planted prescription drugs and issued a misconduct ticket after Garth told him he was filing a grievance against them | Smith and Bergeron | December 11, 2019 |
| 4 | Searched cell | Unnamed Officers | December 12, 2019 |
| 5 | Searched cell | Newland | December 13, 2019 |

## V.  Grievances

The parties identified two relevant grievances filed by Garth.  These grievances are summarized below:

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-19-12-3238-28b (ECF No. 21-3, PageID.313-17.) | B. Hall and unknown officer who is not a Defendant | Retaliation and harassment | December 11, 2019 | Rejected as vague | Rejected | Rejected |
| URF 19-12-3239-17a (ECF No. 21-3, PageID.318-22.) | D. Hall (MUO), Golladay, Smith, Bergeron, and Newland | Retaliatory cell searches and harassment | December 8-13, 2019 | Denied | Denied | Denied |

## VI. **Misconduct**

Garth also received a Class I misconduct ticket for substance abuse – possession of 22 prescription Motrin pills – on December 11, 2019.  (ECF No. 21-4, PageID.327.)  Garth was found guilty of the misconduct after a hearing on December 20, 2019, and sentenced to 30 days loss of privileges beginning on December 21, 2019.  (*Id.*, PageID.326.)  Garth appealed the decision by requesting a rehearing on January 5, 2020.  (*Id.*, PageID.325.)  His request was denied.  (*Id.*, PageID.324.)

## VII. **Analysis**

Corrections Officers B. Hall, D. Hall, Smith, Bergeron, and Golladay argue that Garth failed to exhaust his administrative remedies against them prior to filing this lawsuit.  Defendants argue that Garth's two grievances failed to exhaust his claims against them.  In addition, they argue that Garth failed to exhaust his retaliatory misconduct ticket claim (claim 3) because he did not raise a retaliation defense during his misconduct hearing or in his appeal of the misconduct conviction.

### 1. **Grievances**

Grievance **URF-19-12-3238-28b** was rejected as vague at each step of the grievance process.  (ECF No. 21-3, PageID.314-17.)  Garth asserted on December 11, 2019, CO B. Hall and an unknown officer harassed him with "demeaning retaliatory actions."  Defendant B. Hall is the only Defendant names in this grievance.  Defendants argue that Garth failed to properly exhaust his claims in this grievance.  Garth argues that the grievance was improperly rejected.

In his Step I grievance, Garth wrote the following:

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted
to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. *THIS COMPLAINT IS BASED UPON STAFF CORRUPTION, ABUSE OF AUTHORITY, FAILURE TO MAINTAIN GOOD ORDER AND DISCIPLINE, HARASSMENT AND RETALIATION IN VIOLATION PD 03.03.130-(E)(6),(J),(K),(M) AND CIVIL SERVICE RULES, 2-8 "ETHICAL STANDARDS AND CONDUCT."       I AM UNDER EXTREME DURESS, HARASSMENT AND ETHNIC INTIMIDATION BY C/O B. HALL AND THE OTHER REGULAR SCHOOL OFFICER (NAME UNKNOWN). C/O HALL AND CO-WORKER THROUGH THEIR ACTS AND OMISSIONS ARE ENGAGING IN A PATTERN OR PRACTICE OF FAILING TO PROVIDE ME WITH HUMANE TREATMENT AND CONDITIONS OF CONFINEMENT AND WITH A ENVIRONMENT THAT IS SAFE, COMPETENT AND REASONABLE THAT MAINTAINS GOOD ORDER AND DISCIPLINE.*
        *ON A DAILY BASIS I AM FACED WITH THE DIFFICULT AND IMPOSSIBLE TASK, BUT NOT LIMITED TO, AVOIDING BEING SUBJECTED TO STAFF ABUSE, THREATS, VERBAL, MENTAL AND PHYSICAL ABUSE, HARASSMENT, HUMILIATION, DEMEANING, RETALITORY ACTIONS, INITIATED AND INSTIGATED BY BOTH SCHOOL OFFICERS.        THIS HARASSMENT I COMPLAIN OF RISES TO A LEVEL OF PERVASIVNESS AND SEVERITY THAT IS REASONABLY INTERFERING WITH MY CIVIL RIGHTS AND ABILITY TO REHABILITATE MYSELF; THEREBY ALTERING THE CONDITIONS OF MY CONFINEMENT. CREATING A DANGEROUS AND HOSTILE ENVIRONMENT FOR ME AND HIS CO-WORKERS, THAT MAY OR MAY NOT A CAUSE ME TO BE ON THE DEFENSIVE.*
        *PD 03.02.130(K) AND 03.03.130(I)(6) STATES; "STAFF SHALL AVOID ANY ACTIONS THAT GIVES THE "LEAST APPEARANCE" OF REPRISALS, RETALIATION AND HARASSMENT." PD 03-03.130(5). (PRISONERS SHALL NOT BE SUBJECTED TO STAFF ABUSE/PERSONAL ABUSE FROM STAFF.)*
                                                           Math Garth  Grievant's Signature
        *RESOLUTION: THIS MATTER BE INVESTIGATED BY INTERNAL AFFAIRS DIVISION PER. PD 01-01-140.*

(ECF No. 21-3, PageID.316.)

        It appears that this grievance was rejected as vague.  (*Id.*, PageID.317.)  Garth

argues that the Court should determine that this grievance was improperly rejected

as vague.  In the opinion of the undersigned, the rejection of Garth's Step I grievance

as vague was appropriate.  The Step I grievance named CO B. Hall but failed to assert

that B. Hall took any specific retaliatory action against Garth.  In addition, Garth did

not raise the issue of a retaliatory cell search in this grievance.  In the opinion of the

undersigned, Garth failed to properly exhaust a retaliation claim against CO B. Hall

or any other Defendant in grievance **URF-19-12-3238-28b**.

        Defendants argue that Grievance **URF 19-12-3239-17a** only exhausted claims

that arose after December 11, 2019.  (ECF No. 21, PageID.285.)  Garth alleged in his

complaint that on December 11, 2019, he informed  B. Hall, Smith, and Bergeron that

he intended to file a grievance.  Then Defendants Smith and Bergeron searched his

cell and issued him the Class I misconduct ticket.  In his Step I grievance, Garth wrote:



(ECF No. 21-3, PageID.321.)

This grievance asserts harassment or retaliation claims.  Specifically, Garth states that CO B. Hall searched his cell on December 9, 2019, and CO Golladay searched his cell on December 10, 2019.  However, a fair reading of Garth's complaint shows that he asserted these claims as harassment claims and not retaliation claims. (ECF No. 1, PageID.5.)  Garth failed to allege prior protected conduct that could be the basis for retaliatory searches on December 9 or 10, 2019.  (*Id.*)

Garth's complaint alleges that he first engaged in protected conduct on December 11, 2019, and that he suffered retaliation after he told COs Hall, Smith, and Bergeron that he intended to file a grievance.[6]  (*Id.*)

_____

[6]    There may be a dispute as to exact date or time that Garth first engaged in protected conduct.  Garth alleges that he informed Defendants that he intended to file a grievance prior to the cell search and his receipt of the misconduct ticket on

Logically, an adverse action constituting retaliation must follow some form of protected conduct.  Thus, based on the timeline of the events in this case, Defendants could only have engaged in retaliation after Garth complained and threatened to file a grievance on December 11.  Thus, in the opinion of the undersigned, this grievance did not exhaust retaliation claims against Defendant CO D. Hall or B. Hall for conduct that occurred on December 9, 2019, or against Defendant CO Golladay for conduct that occurred on December 10, 2019.

Garth also asserted in this grievance that his cell was searched by COs Smith and Bergeron in retaliation for voicing his intention to file a grievance on September 11, 2019.[7]  In the opinion of the undersigned, Garth has shown that he exhausted his retaliatory cell search claim arising on September 11, 2019, against COs Smith and Bergeron.

## 2.  Class I Misconduct ticket

Defendants also argue that Garth failed to properly exhaust his retaliatory misconduct ticket claim by raising the issue of retaliation in his request for rehearing of the misconduct guilty finding.  Defendants concede that Garth raised the issue of

---

September 11, 2019.  Defendants argue that his grievance filing is protected conduct and retaliatory acts could have only occurred after September 11, 2019.  Both of Garth's grievances were submitted after the retaliatory acts allegedly occurred. Therefore, only Garth's alleged September 11, 2019, statement of his intention to file a grievance could be the basis for his assertion of protected conduct.

[7]     Garth also asserted in this grievance that CO Newland retaliated on September 13, 2019, by searching his cell.  CO Newland is not asserting that Garth failed to exhaust this claim.

retaliation at the hearing level in the statement he submitted prior to the hearing.[8]

A review of the record confirms this point.  (*See* ECF No. 21-4, PageID.328 (statement

by Garth dated December 12, 2019).)  And Garth concedes that he did not use the

word "retaliation" in his request for a rehearing by reasserting that the Motrin pills

had been planted or that Defendants issued the misconduct ticket in retaliation for

his intention to file a grievance.   Garth wrote in his request for a rehearing:



(ECF No. 21-4, PageID.325.)

Garth argues that *Siggers* does not require him "to state a retaliation claim

when seeking a rehearing of a Class I misconduct."  (ECF No. 24, 363.)  The Court

must evaluate the request for a rehearing based upon the written misconduct findings

to determine whether a prisoner preserved the retaliation claim in his appeal.  The

Class I Misconduct Hearing Report states in part:

---

[8]    The misconduct hearing took place on December 20, 2019.  (ECF No. 21-4, PageID.326.)

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Unless otherwise noted all documents are one page. The prisoner is present and the misconduct report is reviewed with him along with his statement (5 pg), Nurse Miller's Identification, Contraband Removal Record, and picture. I find that the questions not asked are not necessary or relevant as they would either not prove or disprove the charges or answered by the report or nurse's statement. Prisoner Garth states that he grieved the officers sometime between 10 to 12th, they had been harassing him for a long time but did not threaten him until after this. When asked he said he had not searched in 8 months and never locked it. Prisoner has nothing further to add. No further evidence is needed. Prisoner is informed of the findings, sanctions and sanction dates and told he will receive the report later.

**REASONS FOR FINDINGS**

First, I find that I am not biased for or against Prisoner Garth and have no personal knowledge of him or this incident and have no pecuniary interests in the out come of any of the hearings. Prisoner Garth had in his area of control and therefore in his possession 22 prescription motrin pills without staff authorization on 12-11-19 at 0847 hrs. A prisoner is not allowed to possess restricted medication without staff authorization. Per MDOC PD 03.03.105, a prisoner is presumed to be in possession of anything in his area of control and required to seach his area of control frequently to make sure it is free from contraband. Prisoner Garth does not rebut the presumption by saying he never secures his footlocker or has not searched it in months. Also it is not believed that he had been being harassed by the officer he would have grieved them before this instead of saying he may have grieved them the day before or after it. The Officer is clear and factual in his statement and is found to be credible. The charge is upheld.

(ECF No. 21-4, PageID.326.)

Garth's retaliation claim was raised at the hearing and rejected by the Hearings Administrator Russell. Hearings Administrator Russell denied the request for a rehearing by stating that "[a]ll relevant issues were addressed at the hearing." (*Id.*, PageID.324.) Based upon the finding at the misconduct hearing, Garth preserved the retaliation issue in his request for a rehearing. By denying the request for a rehearing, Hearing Administrator Russell necessarily considered Garth's retaliation claim, just as he did at the original hearing.

In the opinion of the undersigned, when viewed in the light most favorable to Garth, Garth exhausted his administrative remedies as to his retaliatory misconduct claim against COs Smith and Bergeron.

16

## VIII.  Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motion for summary in part and deny the motion in part as follows:

1. It is recommended that the Court dismiss Garth's claims against D. Hall, Golladay, and B. Hall.  (Claims 1, 2, and 4).[9]

2. It is recommended that the Court deny the motion as to Defendants Smith and Bergeron.

If the Court adopts this recommendation, the following claims will remain:

The retaliation claims asserted against Defendants Smith and Bergeron (Claim 3) arising from the December 11, 2019, cell search and the Class I misconduct ticket, and the retaliation claim asserted against Defendant Newland (Claim 5) arising out the cell search on December 13, 2019.

Dated:   July 18, 2022                             /s/ Maarten Vermaat
                                                   MAARTEN VERMAAT
                                                   U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[9]     Claim 4 is against unnamed officers.  Garth has not identified the unnamed officers or exhausted a retaliation claim based upon the December 12, 2019, cell search.

17