UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK GARTH, #950635,

        Plaintiff,

v.

UNKNOWN SMITH, et al.,

        Defendants.

_____/

Case No. 2:21-cv-47

Hon. Jane M. Beckering
U.S. District Judge

# REPORT AND RECOMMENDATION

## I.  Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment (ECF No. 45).

Plaintiff — state prisoner Mark Garth — filed suit pursuant to 28 U.S.C. § 1983 on March 11, 2021. (ECF No. 1.) In his verified complaint, Garth alleged that while he was confined at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, URF employees[1] violated his First, Eighth, and Fourteenth Amendment rights. (*Id.*, PageID.14.) More specifically, Garth alleged that while he was employed in the URF law library from July 10, 2019 to December 11, 2019, URF COs Hall, Smith, and Bergeron repeatedly harassed him. (*Id.*, PageID.5.) On December 11,

---

[1] Garth initially named sixteen URF employees as defendants: (1) Corrections Officer (CO) Hall, (2) CO Smith, (3) CO Bergeron, (4) CO Hall, (5) CO Golladay, (6) CO Newland, (7) CO Hasse, (8) CO Stevenson, (9) CO Bourque, (10) CO Gurnoe, (11) CO Gilbert, (12) Prison Counselor (PC) Hetrick, (13) CO Bradly, (14) CO Bullman, (15) CO Baker, and (16) CO Lipponen. (ECF No. 1, PageID.2-5.)

2019, Garth told the three COs that he would be filing a grievance and lawsuit against them for "harassment and threatening of [Garth's] person, property, and employment." (*Id.*) Garth alleged that the COs and several of their colleagues then began a "campaign of retaliation, harassment, and ethnic intimidation." (*Id.*, PageID.6.) That alleged campaign lasted through February of 2020. (*Id.*, PageID.6-13.)

The following claims remain at this stage of the case: (1) Garth's retaliation claim against Defendant COs Smith and Bergeron for searching Garth's cell and issuing Garth a Class I misconduct on December 11, 2019, and (2) Garth's retaliation claim against Defendant CO Newland for searching Garth's cell on December 13, 2019. (ECF No. 36, PageID.453 (R&R); ECF No. 39 (Order Adopting R&R).)

Defendants now move for summary judgment. (ECF No. 45.) Defendants argue that there are no genuine issues of material fact. They aver that Garth's alleged protected conduct — his December 11, 2019 threat to file a grievance and lawsuit against COs Hall, Smith, and Bergeron — was frivolous and therefore unprotected. (*Id.*, PageID.492-493.) They also contend that CO Newland was unaware of Garth's alleged protected conduct (*id.*, PageID.494), and that CO Smith was not involved in the December 11, 2019 search of Garth's cell or the resulting Class I misconduct (*id.*, PageID.497). Finally, Defendants argue that the factual findings of the Administrative Law Judge (ALJ) at the Class I misconduct hearing are entitled to preclusive effect, and that they bar Garth's retaliation claims against COs Smith and Bergeron. (*Id.*, PageID.506.)

In response, Garth indicated that he does not oppose summary judgment in favor of CO Newland. (ECF No. 55, PageID.595.) But he does oppose summary judgment in favor of COs Smith and Bergeron. Garth contends that his threat to file a grievance and lawsuit against COs Hall, Smith, and Bergeron was far from frivolous. (*Id.*, PageID.600.) He says that CO Smith was involved in the December 11, 2019 search of his cell. (*Id.*, PageID.601-602.) And he also argues that the ALJ's findings are not entitled to preclusive effect because he was not given a full and fair opportunity to litigate the factual disputes. (*Id.*, PageID.603.)

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment. In the opinion of the undersigned, there are no genuine issues of material fact. The record reflects that CO Newland was not aware of Garth's alleged protected conduct when he searched Garth's cell on December 13, 2019. And the ALJ's findings that Garth was not being harassed or retaliated against and that he was guilty of the Class I misconduct charges are entitled to preclusive effect.

## II.     Additional Procedural History

After Defendants filed their motion for summary judgment on February 3, 2023, Garth moved to strike the motion on the grounds that Defendants had not served him with the motion and accompanying brief. (ECF No. 48.) The Court denied Garth's motion after finding that the motions were properly served. (ECF No. 51, PageID.576.) But when Garth filed his response on March 15, 2023, he indicated that he still had not received Defendants' motion or accompanying brief and was therefore

"responding blindly." (ECF No. 52, PageID.577.) Based on this statement, the Court ordered the Clerk's Office to mail Garth copies of Defendants' motion and accompanying brief so that Garth could address Defendants' arguments in a supplement to his response. (ECF No. 54, PageID.594.) Garth filed his supplement on April 10, 2023. (ECF No. 55.)

### III. Pertinent Factual Allegations

Garth says that while he was employed in the URF East Law Library from July 10, 2019 to December 11, 2019, he was "verbally threatened" by COs Hall, Smith, and Bergeron. (ECF No. 1, PageID.5.) More specifically, Garth says that the COs threatened to set Garth up, take Garth's job, and get Garth placed in segregation. Garth says that on December 11, 2019, he told the COs that he would be filing a grievance and lawsuit against them for harassing him and threatening his "person, property and employment." (*Id.*)

On the same date, Garth says that COs Smith and Bergeron retaliated against him by conducting a search of Garth's cell, planting prescription pills in his area of control, and issuing him a "substance abuse misconduct." (*Id.*) Afterwards, Garth says that COs Hall, Smith, and Bergeron told other prison staff about his threat to file a grievance and lawsuit against them. (*Id.*, PageID.6.) On December 13, 2019, CO Newland searched Garth's cell. (*Id.*)

### IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

4

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V. Analysis

As set forth above, Garth alleges that after he threatened to file a grievance against Defendants Smith and Bergeron, they retaliated against him by searching his cell, planting pills in his cell, and issuing him a misconduct ticket. In his complaint, Garth further alleges that Defendant Newland conducted a retaliatory search of his cell.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.*

5

To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).

Here, Defendants' challenges touch on every element of Garth's claims. Defendants aver that Garth's threat to file a grievance and lawsuit against COs Hall, Smith, and Bergeron was frivolous and therefore did not constitute protected conduct. They further assert that there is no evidence that CO Smith took an adverse action against Garth. Finally, they claim that CO Newland was unaware of Garth's alleged protected conduct, and that, as determined by the Class I misconduct hearing officer, they did not search Garth's cell or issue the misconduct based on Garth's threat to file the grievance and lawsuit. The undersigned addresses each element in turn.

### a. Protected Conduct

Defendants first assert that Garth's threat to file a grievance was frivolous and therefore unprotected. (ECF No. 46, PageID.493.) In the opinion of the undersigned, the facts on the record present a close call.

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). "If the grievances are frivolous, however, this right is not protected." *Id.*

As acknowledged by the Sixth Circuit in *Maben v. Thelen*, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying

6

grievance itself is *de minimis*." 887 F.3d 252, 264–65 (6th Cir. 2018) (collecting cases). One circumstance in which courts have found grievances to be *de minimis* and therefore frivolous is when the grievance complains of verbal abuse or harassment. *Sampson v. Davis*, No. 2:19-CV-176, 2022 WL 2760061, at *3 (W.D. Mich. May 12, 2022) (finding that a prisoner's threat to file a grievance on a CO for verbal harassment was *de minimis* and therefore frivolous), *R&R adopted*, No. 2:19-CV-176, 2022 WL 2753565 (W.D. Mich. July 14, 2022); *Maben*, 887 F.3d at 264 (citing *Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434456, at *2 (6th Cir. Sept. 18, 2000)).[2]

In Garth's complaint, he avers that COs Hall, Smith, and Bergeron subjected him to "abuse/harassment" from July 10, 2019 to December 11, 2019. (ECF No. 1, PageID.5.) More specifically, Garth says that the COs "threatened to set [him] up and take [his] job and have [him] placed in segregation." (*Id.*) On December 11, 2019, Garth says that he told the COs he "would be filing a grievance and lawsuit against them for the harassment and threatening of [his] person, property and employment." (*Id.*) These statements alone seem to rise above the level of *de minimis* verbal harassment. But even if they did not, there is more.

In a verified statement that Garth attached to his complaint, Garth attested that prior to his threat to file a grievance against COs Hall, Smith, and Bergeron, the

---

[2] Though the undersigned relies in part on *Maben* for the proposition that grievances asserting verbal abuse are *de minimis*, and *Maben* cites *Kilchermann*, the undersigned notes that "*Kilchermann* is not persuasive to the extent it suggests that a grievance must assert a constitutional right in order to constitute protected conduct. This is not the proper standard for protected conduct." *Rayos v. Leavitt*, No. 1:20-CV-968, 2022 WL 873633, at *1 (W.D. Mich. Mar. 24, 2022).

7

COs "instigated a confrontation with [Garth] . . . by harassing [Garth], verbally abusing [Garth], using racial and ethnic intimidation tactics against [Garth] and demeaning and humiliating [Garth] in front of other inmates and staff." (ECF No. 1-1, PageID.19.) While simple verbal abuse may be *de minimis*, racial and ethnic intimidation are not. Indeed, Michigan Department of Corrections (MDOC) Policy Directive 03.03.130 ¶ L explicitly prohibits "[d]iscrimination based on personal prejudices as to race, religion, color, national origin, age, sex, sexual orientation, gender identity, height, weight, marital status, or disability." *See Parker v. Reddin*, No. 20-1106, 2020 WL 8415084, at *4 (6th Cir. Aug. 5, 2020) (finding that the plaintiff's complaint that prison staff destroyed his toothpaste and potato chips during a search could constitute protected conduct because it concerned "at least a colorable violation" of MDOC policy). And although Garth's allegations may be vague, the undersigned must "view the evidence and draw all reasonable inferences in favor of the non-moving party." *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (quoting *Hall v. Warren*, 443 Fed.Appx. 99, 106 (6th Cir.2011)). Viewing the evidence in the light most favorable to Garth as the non-moving party, the undersigned finds that there are genuine issues of material fact bearing on whether Garth was engaged in protected conduct when he threatened to file a grievance against COs Hall, Smith, and Bergeron on December 11, 2019. The undersigned therefore turns to the second element of Garth's claims.

### b. Adverse Action

Garth alleges that Defendants Smith and Bergeron took adverse actions against him by searching his cell, planting pills in his cell, and issuing him a misconduct ticket on December 11, 2019. He alleges that Defendant Newland took an adverse action against him by searching his cell on December 13, 2019.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show an adverse action by a prison official that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "capable of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Significantly, Defendants do not contest that the cell searches or misconduct ticket constituted adverse actions. Instead, Defendants argue that there is no evidence that CO Smith was personally involved in the December 11, 2019 cell search or the resulting Class I misconduct. (ECF No. 46, PageID.497-498.) Defendants point out that the misconduct was signed by CO Bergeron alone, and that Garth did not personally observe the search of his cell. Instead, Garth merely claims that he saw both Smith and Bergeron in his housing unit when he arrived back from work, and that his cellmate reported that both COs searched their cell. (*Id.*)

In response, Garth provided a verified statement from his cellmate at the time, Elmoe Dozier, #679290. (ECF No. 55-2, PageID.611.) Dozier attested that on

December 11, 2019, while Garth was at work, COs Smith and Bergeron entered Garth and Dozier's housing unit and walked back to their cell. When Dozier asked the COs what was going on, Dozier says that the COs responded by telling him that he "should talk to [his] bunkie and tell him to stop writing grievances." (*Id.*) The COs then trashed the cell and took property belonging to both Dozier and Garth. Despite Defendants' claim that "Garth cannot present admissible evidence that Defendant Smith was personally involved in the cell search or issuance of the . . . misconduct ticket" (ECF No. 46, PageID.499-500), Dozier's verified statement is sufficient to create a genuine issue of material fact with respect to Smith's personal involvement in the December 11, 2019 search and resulting misconduct. The undersigned therefore turns to the final element of Garth's claims.

### c. Causal Connection

Defendants next argue that Garth's claims fail because they did not take adverse actions against Garth for threatening to file a grievance and lawsuit against COs Hall, Smith, and Bergeron. At the summary judgment stage, the Sixth Circuit employs a burden-shifting approach with regards to this causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Blatter*, 175 F.3d at 399; *see also Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007).

As an initial matter, Defendants aver that CO Newland was not aware of Garth's threat to file a grievance, and that Garth has not placed evidence on the

10

record suggesting otherwise. (ECF No. 46, PageID.494.) Garth seems to agree, stating that he "does not contest Defendant Newland's claim for summary judgment." (ECF No. 55, PageID.596.) Accordingly, the undersigned finds that there are no genuine issues of material fact as to the causal element of Garth's retaliation claim against CO Newland and will grant Defendants' motion for summary judgment as to that claim. But the parties disagree as to whether Garth has set forth sufficient evidence of retaliatory motive with respect to Defendants Smith and Bergeron.

Defendants begin by arguing that "Garth has no evidence other than his own self-serving allegations that Defendants conducted a search of Garth's cell because of his threat to file grievances and/or lawsuits." (ECF No. 46, PageID.500.) The undersigned respectfully disagrees. As an initial matter, the undersigned notes that COs Smith and Bergeron allegedly searched Garth's cell on December 11, 2019; the same day that Garth threatened to file a grievance and lawsuit against them and CO Hall. *King v. Zamiara*, 680 F.3d 686, 659-96 (6th Cir. 2012) ("We have previously considered the temporal proximity between protected conduct and retaliatory acts as creating an inference of retaliatory motive." (first citing *Paige v. Coyner*, 614 F.3d 273, 281–82 (6th Cir. 2010); and then citing *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004))). Furthermore, Dozier attested that COs Smith and Bergeron told him that he "should talk to [his] bunkie and tell him to stop writing grievances" before conducting the December 11, 2019 search. (*Id.*) In the undersigned's opinion, this evidence is sufficient to create a genuine issue of material fact as to whether COs Smith and Bergeron were motivated by Garth's alleged protected conduct when they

11

searched his cell and issued him a Class I misconduct. The burden therefore shifts to Defendants to establish that they would have conducted the search and issued the misconduct ticket regardless of Garth's alleged protected conduct. *Blatter*, 175 F.3d at 399.

Defendants claim to have met their burden. Defendants say that they had a "valid, non-retaliatory basis" for searching Garth's cell and issuing him the misconduct ticket. (ECF No. 46, PageID.506.) Specifically, they say the search was conducted to "clear the facility of contraband." (*Id.*, PageID.507.) And Defendants point out that Garth was ultimately found guilty of the December 11, 2019 misconduct ticket. (*Id.*, PageID.504.) Because it was a Class I misconduct, and the misconduct hearing was held by an Administrative Law Judge, Defendants argue that the guilty finding precludes Garth's retaliation claims. (*Id.*)

For a Hearing Officer's determinations to be entitled to preclusive effect, courts look to whether: "1) the state agency 'acted in a judicial capacity'; 2) the hearing officer 'resolved a disputed issue of fact that was properly before it'; [and] 3) the prisoner 'had an adequate opportunity to litigate the factual dispute'." *Maben v. Thelen*, 887 F.3d 252, 259 (6th Cir. 2018) (quoting *Peterson v. Johnson*, 714 F.3d 905, 911-13 (6th Cir. 2013)). "[I]f these other three requirements are met, we must 'give the agency's finding of fact the same preclusive effect it would be given in state courts.'" *Id.* (quoting *Peterson*, 714 F.3d at 913 (6th Cir. 2013)). The Class I Misconduct Hearing Report for the December 11, 2019 misconduct and the verified statement Garth submitted for the hearing are shown below:

| MICHIGAN DEPARTMENT OF CORRECTIONS <br> **CLASS I MISCONDUCT HEARING REPORT** | | | | | HI McCollum | CSJ-240B Rev. 10/10 |
|---|---|---|---|---|---|---|
| Prisoner <br> 950635 | Prisoner Name <br> Garth | | | Facility Code <br> URF | Lock <br> M 425 | Violation Date <br> 12/11/2019 |
| Charge(s) <br> **Substance Abuse** | | | | | | |
| If Charge Changed by Hearing Officer | | | | Plea <br> ☐ Guilty   ☒ Not Guilty | | |
| Misconduct Report Read to and Discussed with Prisoner ☒ (check if applies) <br> Hearing Investigation Read to and Discussed with Prisoner ☒ (check if applies) | | | | No Hearing Investigation Requested <br> ☐ (check if applies) | | |

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Unless otherwise noted all documents are one page. The prisoner is present and the misconduct report is reviewed with him along with his statement (5 pg), Nurse Miller's Identification, Contraband Removal Record, and picture. I find that the questions not asked are not necessary or relevant as they would either not prove or disprove the charges or answered by the report or nurse's statement. Prisoner Garth states that he grieved the officers sometime between 10 to 12th, they had been harassing him for a long time but did not threaten him until after this. When asked he said he had not searched in 8 months and never locked it. Prisoner has nothing further to add. No further evidence is needed. Prisoner is informed of the findings, sanctions and sanction dates and told he will receive the report later.

**REASONS FOR FINDINGS**

First, I find that I am not biased for or against Prisoner Garth and have no personal knowledge of him or this incident and have no pecuniary interests in the out come of any of the hearings. Prisoner Garth had in his area of control and therefore in his possession 22 prescription motrin pills without staff authorization on 12-11-19 at 0847 hrs. A prisoner is not allowed to possess restricted medication without staff authorization. Per MDOC PD 03.03.105, a prisoner is presumed to be in possession of anything in his area of control and required to seach his area of control frequently to make sure it is free from contraband. Prisoner Garth does not rebut the presumption by saying he never secures his footlocker or has not searched it in months. Also it is not believed that he had been being harassed by the officer he would have grieved them before this instead of saying he may have grieved them the day before or after it. The Officer is clear and factual in his statement and is found to be credible. The charge is upheld.

**PROPERTY DISPOSITION (for contraband see PD 04.07.112)**
The pills were disposed of by health care

**FINDINGS**

| Charge No. 1 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code 042 |
| Charge No. 2 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code |
| Charge No. 3 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code |
| Charge No. 4 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code |

**DISPOSITION (select one or more) (Toplock & LOP Sanctions End at 6:00 am)**

| | | Begins | Ends | | |
|---|---|---|---|---|---|
| ___ | Days of Detention | | | ___ | Days Credit |
| ___ | Days Top Lock | | | ___ | Hours Extra Duty |
| 30 | Days Loss of Privileges | 12/21/2019 | 01/20/2020 | $ ___ | Restitution |

| Misconduct Hearing Report personally handed to Prisoner by Hearing Officer on this date: ___ (Check If Applies) ☐ | Hearing Report given to Staff Member by Hearing Officer for Delivery to Prisoner this date: **12/20/2019** (Check If Applies) ☒ |
|---|---|
| Date of Hearing **12/20/2019** | Name of Staff Member **McCollum** |
| Hearing Officer's Name <br> O'Brien 052 | Hearing Officer's Signature | Date <br> 12-20-19 |

DISTRIBUTION  Record Office, Central Office File, Prisoner, Counselor File, Hearing Investigator

(ECF No. 46-3, PageID.533)

<u>VERIFIED STATEMENT of MARK GARTH #950635</u>
<u>FOR CLASS-1 SUBSTANCE ABUSE MISCONDUCT</u>
<u>DECEMBER 12, 2019</u>

I MARK GARTH #950635, SWEARS UNDER THE PENALTY OF PERJURY TO THE FOLLOWING FACTS:

1. THAT I AM REQUESTING AN "EVIDENTIARY HEARING" PURSUANT TO MCL 791.252(a), WITHOUT UNNECESSARY DELAY;

2. I NEVER HAD OR POSSESSED ANY MOTRIN PILLS OR ANY PILLS.

3. I WAS SET UP AND FRAMED BY C/O HALL, C/O SMITH AND C/O D. BERGERON WHO PLANTED THE ALLEGED PILLS IN MY ROOM AREA OF CONTROL. AS RETALIATION FOR ME THREATENING TO FILE A GRIEVANCE.

4. THESE THREE OFFICERS INSTIGATED A CONFRONTATION WITH ME IN THE EAST SCHOOL BY HARASSING ME, VERBALLY ABUSING ME, USING RACIAL AND ETHNIC INTIMIDATION TACTICS AGAINST AND DEMEANING AND HUMILIATING ME IN FRONT of OTHER INMATES AND STAFF.

5. I WAS VERBALLY THREATENED BY THESE OFFICERS AND DIRECTLY TOLD THAT THEY WOULD SET ME UP AND TAKE MY JOB AND PUT ME IN THE HOLE.

6. I EXPRESSED TO THEM THAT I WOULD BE FILING A GRIEVANCE A LAW SUIT AGAINST THEM FOR HARASSING ME AND THREATENING ME.

7. WHILE I WAS AT WORK C/O SMITH AND C/O BERGERON, CONDUCTED A SHAKE DOWN OF MY CELL TO FURTHER HARASS AND RETALIATE AGAINST FOR EXERCISING MY RIGHT TO FILE A VERBAL COMPLAINT AND LAWSUIT FOR THEIR ACTIONS.

8. I AM BEING SET-UP AND FRAMED BY C/O HALL, SMITH AND BERGERON FOR EXERCISING MY FIRST AMENDMENT RIGHTS TO SEEK REDRESS OF GRIEVANCES AND THEIR ACTIONS CONSTITUTE AN EGREGIOUS ABUSE OF THEIR AUTHORITY.

9. THIS ADVERSE ACTION AGAINST ME WAS MOTIVATED BY ME THREATENING THEM WITH GRIEVANCES AND LAWSUITS. THIS FALSE MISCONDUCT IS RETALIATION.

I MARK GARTH, SWEAR UNDER THE PENALTY OF PERJURY PURSUANT TO 28 U.S.C §1746, THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON: DECEMBER 12, 2019.

MARK GARTH #950635

CC: HEARING INVESTIGATOR
    PERSONAL FILE

P.S. ATTACHED WITH (<u>QUESTIONS PRESENTED</u> AND <u>AFFIDAVIT OF BIASNESS</u>)
(6-QUESTIONS)

(*Id.*, PageID.537.)

14

The hearing report indicates that ALJ O'Brien acted in a judicial capacity by considering evidence entered into the record by Garth and Bergeron, holding a formal hearing in which the parties were permitted to argue their accounts of the incident, and "issu[ing] a written final decision that . . . could have been subject to direct review in state court." *Peterson*, 714 F.3d at 912. Because the hearing was for a Class I misconduct, Garth was provided with a "raft of judicial-type protections," including, but not limited to, a hearing without undue delay, reasonable notice, and a right to appeal. *Id.* at 912-913.

As indicated by Defendants, ALJ O'Brien found that Garth was guilty of having prescription medication in his area of control. ALJ O'Brien also found Garth's claims of harassment and retaliation to be unfounded. In the opinion of the undersigned, these factual disputes, which formed the basis for the charge and for Garth's defense thereto, were properly before ALJ O'Brien.

Turning then to whether Garth had a full and fair opportunity to litigate the disputes, the undersigned acknowledges Garth's complaints that he was not permitted to cross-examine CO Bergeron, and that ALJ O'Brien was biased against him. (ECF No. 55, PageID.603.) But while prisoners do not have the opportunity to cross-examine witnesses during a Class I misconduct hearing, they may provide the hearing officer with written questions for the witnesses. MCL 791.252(e). If the hearing officer decides not to ask the questions, they must explain their decision on the record. *Id.* ALJ O'Brien did just that. (ECF No. 46-3, PageID.533 ("I find that the questions not asked are not necessary or relevant as they would either not prove

15

or disprove the charges or [are] answered by the report or nurse's statements.") As noted by the Sixth Circuit, "[t]his accommodation seems, in the prison context, sufficient to preserve fairness without creating a forum for prisoners to abuse witnesses or otherwise waste government time." *Peterson*, 714 F.3d at 916.

Turning then to Garth's complaints of bias, the undersigned notes that no such bias is reflected in the Misconduct Hearing Report. Furthermore, this is not the appropriate forum to raise such complaints. *Id.* (determining that the hearing officer's findings were entitled to preclusive effect despite the plaintiff's claim that the officer was biased). Instead, Garth "was entitled to raise those concerns in an appeal to state court and, if the state courts had failed to resolve his concerns, to appeal to the U.S. Supreme Court." *Id.*

Ultimately, the undersigned finds that Garth was provided a full and fair opportunity to litigate the above disputes. ALJ O'Brien held the misconduct hearing on December 20, 2019. The Hearing Report reflects that ALJ O'Brien accepted Garth's verified statement into evidence, and that she considered Garth's statements in making her decision.

Because the aforementioned requirements are met, Michigan Courts would give ALJ O'Brien's findings preclusive effect. *Peterson*, 714 F.3d at 917. Thus, the undersigned concludes that ALJ O'Brien's findings are entitled to preclusive effect, barring Garth's remaining retaliation claims against COs Smith and Bergeron. *See White v. McKay*, No. 2:17-CV-00099, 2022 WL 9809818, at *3-4 (W.D. Mich. Aug. 12, 2022) (finding that the Hearing Officer's rejection of the plaintiff's retaliation defense

16

to a Class I misconduct was entitled to preclusive effect), *R&R adopted sub nom. White v. Goodell*, No. 2:17-CV-99, 2022 WL 4591501 (W.D. Mich. Sept. 30, 2022); *Mays v. Perala*, No. 2:17-CV-00095, 2019 WL 4609928, at \*6 (W.D. Mich. Aug. 5, 2019) (same), *R&R adopted* No. 2:17-CV-95, 2019 WL 4601712 (W.D. Mich. Sept. 23, 2019).

In sum, the undersigned finds that there are no genuine issues of material fact bearing on the causation element of Garth's retaliation claim against CO Newland; the record reflects that CO Newland was unaware of Garth's protected conduct. The undersigned further finds that there are no genuine issues of material fact bearing on the causation element of Garth's retaliation claims against COs Smith and Bergeron; the ALJ at Garth's Class I misconduct hearing found that Garth was not being harassed or retaliated against.

## VI. Qualified Immunity

In addition to arguing that they did not violate Garth's rights under the First Amendment, Defendants assert that they are entitled to qualified immunity. (ECF No. 46, PageID.510.)

Defendants claim for qualified immunity is largely redundant. After initially arguing that they are entitled to judgment because they did not violate Garth's First Amendment rights, they argue that they are entitled to qualified immunity because they did not violate Garth's First Amendment rights.[3] In any event, the undersigned

---

[3] In other words, Defendants do not argue that the rights at issue were not clearly established.

agrees; because there are no genuine issues of material fact and the undersigned finds that Defendants did not violate Garth's First Amendment rights, the undersigned recommends that Defendants are entitled to qualified immunity. *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

## VII. Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment. In the opinion of the undersigned, the are no genuine issues of material fact. The record reflects that CO Newland was not aware of Garth's alleged protected conduct when he searched Garth's cell on December 13, 2019. And the ALJ's findings that Garth was not being harassed or retaliated against and that he was guilty of the Class I misconduct charges are entitled to preclusive effect.

If the Court accepts this recommendation, this case will be dismissed.

Dated:   April 21, 2023                                        /s/ *Maarten Vermaat*
                                                               MAARTEN VERMAAT
                                                               U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C) Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).